IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| STEVEN ALLEN SCHWARTZ | : | NO. 03-35-1 |

---------------------------------------------------------------

| | | |
|---|---|---|
| STEVEN ALLEN SCHWARTZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | NO. 11-2867 |

MEMORANDUM

Dalzell, J.                                    February 20, 2013

On April 22, 2005, one year after Steven Allen Schwartz

waived his Sixth Amendment right, assumed full responsibility for

his defense, and concluded his self-representation at a fifteen

day trial, a jury convicted him of conspiracy to commit wire and

bank fraud and identity theft (18 U.S.C. § 371).  The jury also

found him guilty of five counts of wire fraud (18 U.S.C. § 1343),

nine counts of bank fraud (18 U.S.C. § 1344), and one count of use

of a fictitious name for mailing (18 U.S.C. § 1342).

On July 26, 2005, we imposed upon Schwartz a 225-month

sentence.  This sentence varied above the Sentencing Guidelines'

advisory range for reasons we explained at length in United States

v. Schwartz, 379 F. Supp. 2d 716 (E.D. Pa. 2005).[1]  Schwartz again

represented himself at the sentencing hearing.  Our Court of

Appeals affirmed his conviction and sentence in United States v.

Schwartz, 315 F. App'x 412 (3d Cir. 2009), along with Schwartz's

conviction and sentence in Criminal No. 04-231 that had proceeded

before our colleague, Judge Bartle.

Schwartz petitioned the United States Supreme Court for

a writ of certiorari.  The Supreme Court obliged the Government to

respond, and the Solicitor General's office filed a twenty-two

page brief concluding that Schwartz's claims warranted no review.

The Court denied Schwartz's petition for writ of certiorari on

April 26, 2010.  Schwartz v. United States, 130 S. Ct. 2371

(2010).

Schwartz filed his timely sixty-five page motion for

habeas corpus relief pursuant to 28 U.S.C. § 2255, to which the

Government responded with one-hundred-seventy-two pages of

opposition.  After affording Schwartz three hundred days to file a

---

[1] In this Memorandum, we found exquisitely pertinent Professor
Harry G. Frankfurt's then-recent On Bullshit (Princeton University
Press 2005) to demonstrate that Schwartz presented a far more
serious offender than the typical con man.  We concluded by
writing that "Quite literally, no one -- investor, lawyer,
receptionist, childhood friend, fiancée, judge, or jury -- should
trust anything this man says."  Id. at 722.  We also found
Schwartz to be "utterly incorrigible" and "undeterrable."  Id. at
723.

reply, we denied his twelfth hour request for a second one-hundred-twenty day extension to file that reply.

For the reasons set forth at length below we will deny Schwartz's § 2255 motion for <u>habeas</u> <u>corpus</u> relief without convening a hearing.  His ineffective assistance of trial and appellate counsel and actual innocence claims fail on the merits.  His trial process and Government abuse claims fail for procedural reasons.  We will decline to issue a certificate of appealability as none is warranted on such a clear and (to risk understatement) fully-developed record.

# Table of Contents

I.   The Contours of Schwartz's § 2255 Motion .................. 6

II.  The Standard for Evaluating a <u>Pro</u> <u>Se</u> § 2255 Motion ......... 6

III. Background Facts: Schwartz's Legal Representation
     During the Pre-Trial, Trial, Sentencing, and
     Direct Appeal Phases of Criminal Action No. 03-35 ......... 8

IV.  Schwartz's Ineffective Assistance of Trial Counsel Claims . 19

  A. The Ineffective Assistance of Trial Counsel Standard ...... 20

  B. Threshold Matter: Schwartz's Sixth Amendment Right to
     Trial Counsel Waiver ...................................... 23

  C. Schwartz's Pre- and Post-Sixth Amendment Waiver
     Ineffective Assistance of Counsel Claims ................. 26
    1. Pre-Waiver Claims...................................... 26
    2. Post-Waiver Claims..................................... 34

  D. Schwartz's Ineffective Assistance of Counsel Claims Arising
     From Alleged Breach of the Attorney-Client Privilege ...... 36

V.   Schwartz's Claims of Ineffective Assistance of Appellate
     Counsel, Trial Process Abuse and Government Misconduct, and
     Actual Innocence .......................................... 42

A.   Ineffective Assistance of Appellate Counsel .............. 42

  1. The Due Process Right to
     Effective Assistance of Appellate Counsel ............... 43
  2. Application: Three Reasons Why The
     Ineffective Appellate Counsel Claims Fail ............... 45
  a) The Appellate Proceedings Were Fair ................... 46
  b) Appellate Counsel's Conduct Was Neither Deficient
     Nor Prejudicial ........................................ 53
  c) Schwartz's Claims Fail As a
     Matter of Legal Pleading Sufficiency ................... 57

  B.  Schwartz's Trial Process and
     Government Misconduct Claims ............................ 60
    1.  The Standard ........................................... 61
    2.  Background Facts: Schwartz's Trial Process
      and Government Abuse Arguments in his § 2255 Motion ..... 62
    3.  Application: The Prior Decisions Will Not Be
      Disturbed And Any New Claims Are Procedurally Barred .... 63

  C.  Schwartz's Actual Innocence Claim ........................ 66

VI.  No Hearing Is Required .................................... 68

VII. We Will Deny Schwartz's Request
    For Leave to Amend His Petition .......................... 69

VIII. No Certificate of Appealability Is Warranted ............. 70

IX.  Conclusion .............................................. 71

I.    The Contours of Schwartz's § 2255 Motion

        Schwartz's pro se § 2255 motion raises four distinct

issues comprised of many sub-issues.  First, he asserts what we

will treat as four different categories of ineffective assistance

of counsel claims.  Specifically, he alleges that his counsel

provided ineffective assistance: (1) before Schwartz decided to

represent himself pro se; (2) during the trial and sentencing

proceedings at which Schwartz represented himself; and (3) on

direct appeal.  Since his fourth claim avers that counsel rendered

ineffective assistance by violating the attorney-client privilege

-- at times that appear to traverse more than one of these

temporal categories -- we will treat this claim separately.

        Second, Schwartz claims that "the process employed by

Judge Dalzell [in conducting his criminal trial] violated

Schwartz'[s] Due Process rights and was lacking in fundamental

fairness".  Pet. 44.  Third, he claims that "the government's

outrageous conduct in this case reaches the extraordinary mark of

prosecutorial misconduct."  Id. at 54.  And fourth, he contends

that he is actually innocent.  Id. at 63.

II.   The Standard for Evaluating a Pro Se § 2255 Motion

        We must "accept the truth of [a § 2255 petitioner's]

factual allegations unless they are clearly frivolous on the basis

of the existing record". United States v. Booth, 432 F.3d 542,

545-46 (3d Cir. 2005) (citations omitted).  Importantly, "vague

and conclusory allegations contained in a § 2255 petition may be

disposed of without further investigation by the District Court".

United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); see

also United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008).

    Though we are to liberally construe pro se litigant

pleadings, see Mala v. Crown Bay Marina, Inc., --- F.3d --- , No.

10-4710, 2013 WL 57895, at *3-*4 (3d Cir. Jan. 7, 2013), this "pro

se practice is a shield against the technical requirements of a

past age", Theriault v. Silber, 579 F.2d 302, 303 (5th Cir. 1978),

and has its limits.  Our Court of Appeals just last month re-

affirmed that we "need not provide substantive legal advice to pro

se litigants."  Mala, 2013 WL 57895, at *3; id. at *4

("Nonassistance is the rule").  Indeed, our Court of Appeals

acknowledged in Mala that "there are limits to our procedural

flexibility.  For example, pro se litigants still must allege

sufficient facts in their complaints to support a claim. . . . At

the end of the day, they cannot flout procedural rules -- they

must abide by the same rules that apply to all other litigants."

Id.  And an experienced pro se litigator "has less reason to

complain than the neophyte pro se litigant" because "[h]is
experiences have made him well acquainted with the courts." See
Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (refusing to be
flexible when interpreting a complaint because the plaintiff was
'an extremely litigious inmate who [was] quite familiar with the
legal system and with pleading requirements'); Cusamano v. Sobek,
604 F. Supp. 2d 416, 445-46 (N.D.N.Y. 2009)." Mala, 2013 WL
57895, at *5.

III. Background Facts: Schwartz's Legal Representation
     During the Pre-Trial, Trial, Sentencing, and
     Direct Appeal Phases of Criminal Action No. 03-35

    On January 16, 2003, a Grand Jury returned a twenty-
seven count Indictment against Schwartz and his mother, co-
defendant Ilene Schwartz.[2]  A week later the matter was assigned to
our docket, and the next day Mark E. Cedrone, Esq., entered his
appearance on Schwartz's behalf.  At that time Schwartz was
released on bail conditions.

    By letter dated and faxed to chambers on March 12, 2004,
Schwartz, in no uncertain terms, informed us that he was "taking
over [his] defense."  March 12, 2004 Letter (Chambers Files,

---

    [2] Though the jury ultimately found co-defendant Ilene Schwartz
guilty of count twenty-three of the Superseding Indictment, we
granted Ilene Schwartz's oral motion for judgment of acquittal on
July 26, 2005.  (Docket Entry # 375, Cr. No. 03-35-2).

Attached as Exhibit).  He also made it clear that "[n]othing in this request should be construed to reflect negatively on Mr. Cedrone."  Id.  Schwartz did not cite any complaint about Cedrone's representation up through that time.  He only took issue with the Government's "fail[ure] to produce 'thousands' of documents" and its conduct in relation to a then-potential Government witness.  Id.

On March 23, 2004, the Government responded to Schwartz's letter expressing its concern that Schwartz had not clearly and unequivocally requested to represent himself under Supreme Court and Third Circuit jurisprudence.  The Government noted that Schwartz's "letter . . . cites no complaint regarding his representation thus far by his counsel".  Docket Entry # 54 at 1.  We had already scheduled for March 25, 2004 a hearing on Schwartz's desire to represent himself before receiving the Government's response, docket entry # 52.

But before we could convene that hearing, the Government filed a motion to revoke Schwartz's bail.  After a hearing on the matter on March 25, 2004, we granted the Government's motion and ordered Schwartz detained.  March 25, 2004 Tr. 36:3-5 (Docket Entry # 57); (Docket Entry # 72).[3]  We had originally intended to

_____

[3] On April 27, 2004, Schwartz filed a motion for bail pending

9

hear argument that day on Schwartz's request to represent himself,
but chose to address the Government's bail revocation motion
instead because "it immediately concern[ed Schwartz's] liberty"
and, thus, "[could have an] impact on the matter" of his decision
to represent himself.  March 25, 2004 Tr. 3:13-19.  We declined to
entertain Schwartz's "adamant . . . desire to represent himself .
. . in connection with his bail revocation proceeding" expressed
on the record that day, id. 10:10-12, because the Government's
motion could "change the ballgame" since Schwartz's freedom was in
jeopardy and confinement would complicate his efforts to represent
himself and prepare for trial.  Id. 10:17-19.

     After we ordered Schwartz to be detained, we recessed
the question of Schwartz's self-representation for a few days
because, in light of his pre-trial detention, "it . . . is . . .
highly material . . . on the issue of representation and his
ability to represent himself.  Just a physical difficulty of
representing himself from 7th and Arch", the intersection of the
Philadelphia Federal Detention Center.  Id. 36:17-21.

     On April 1, 2004, we held a hearing on Schwartz's
request to represent himself and engaged in an extensive on-the-

_____

sentencing with our Court of Appeals.  That Court denied the
motion on June 9, 2004.  (Docket Entry # 118 (Third Circuit Court
of Appeals Docket No. 04-2138)).

record colloquy to ascertain whether he understood the grave risks he faced if he were to proceed pro se. April 1, 2004 Tr. at pgs. 10-33 (Docket Entry # 416). Since Schwartz was now in custody, we stressed the challenges he would face representing himself and preparing his defense from the Federal Detention Center. To drive home the point, we told Schwartz that "Mr. Cedrone could walk over to the public library to look up things. You can't do that." Id. 19:18-21. We cautioned him: "you're going to have, just physically, physically, much more difficulty in investigating your case and in composing pretrial motions than you would have if you weren't in jail." Id. 20:1-4. We told him that "[n]ow that you're in jail, it's just much harder for you, Steven Schwartz, to go out and look for evidence. You understand that?", id. 20:6-8, to which Schwartz responded, "I agree with you a hundred percent." Id. 20:9-10.

We also warned Schwartz that "[y]our access to visitors, including potential new counsel, if you want to do that, or investigator or whoever is assisting you, a friend, would be limited. Because you just can't walk into 7th and Arch and say: 'Hey! I want to see Steven Schwartz.' But you can go to Mr. Cedrone's office and say: 'I'd like to see Mr. Cedrone.'" Id.

11

20:20-21:1.  Again, Schwartz stated "I understand."  Id. 21:6.[4]  We

urged Schwartz not to try to represent himself because he was

"going to be in jail until trial.  It's going to be very difficult

therefore for you to prepare your own defense."  24:2-5.

We told Schwartz on more than one occasion that we could

appoint him new counsel.  We offered "to get -- as [we] did for

[Schwartz's] mother -- another lawyer from our Criminal Justice

Act panel" to represent him in this matter.  Id. 28:3-5; 29:17-21.

Schwartz declined to take us up on this offer.

We repeatedly listed Schwartz's three available options

that only he could choose among: "[t]o stay with Mr. Cedrone; . .

. to get another lawyer from the Criminal Justice Act panel; or

[to] represent [him]self."  Id. 31:1-3.  When we asked Schwartz

"[w]hat is your desire"?, id. 31:4, he initially claimed that we

"left [him] with no choice."  Id. 31:5-6.  We reminded him that we

had "given [him] three options.  It is totally up to you which

option to take."  Id. 31:14-15.  Schwartz explained that "[a]s

long as [we were going to remain] the judge on this case, there is

no attorney in the Eastern District of Pennsylvania that c[ould]

---

[4] To be sure, Schwartz contended that the investigatory work
he wanted was not getting done on time before we had scheduled a
trial date in this complex matter.  We specially listed the trial
on August 19, 2004 for April 4, 2005.  Id. 20:9-11; (Docket Entry
# 158).

provide [him] with effective representation". _Id._ 31:16-20.  We
found Schwartz's view that we had effectively deprived him of
anything to be unresponsive to the "narrow subject . . . [of his]
capacity . . . to represent [him]self, and how difficult, how much
more difficult it [would be] now that [he was] in full custody",
_id._ 22:12-16, because it seemed he was attempting to re-litigate
our already-issued decision that day to deny his first _pro_ _se_
motion to recuse.  _Id._ 22:12-16; _see also_ docket entry # 65.  We
directed Schwartz to answer our question: "Do you want to
represent yourself and not have a lawyer; notwithstanding
everything you and I have talked about[?]", _id._ 32:13-15, to which
Schwartz answered unequivocally, "I want to represent myself."
_Id._ 32:19.[5]

　　　After this lengthy colloquy we found "that the defendant
ha[d] acted voluntarily; and he [wa]s aware of all the risks of
representing himself.  And [we], therefore, permit[ted] Steven
Schwartz to represent himself."  _Id._ 32:20-24.  We also obliged
Cedrone to remain as standby counsel.  Schwartz never reconsidered
this position.  The Grand Jury returned a twenty-seven count

---

[5] This confirmed what Schwartz had told us at the previous
week's bail revocation hearing and what Cedrone characterized as
Schwartz's "persist[ent] . . . desire to represent himself", _id._
9:19-20, "on three separate occasions since his bail was revoked."
_Id._ 9:16-17.

Superseding Indictment against Schwartz and his mother on August
12, 2004.  A week later we specially listed this case for trial on
April 4, 2005.

Eventually, on September 24, 2004, we granted Schwartz's
motion for pretrial release pursuant to certain conditions in
light of the unique circumstances of his case.  Docket entry #
181.  Judge Bartle, on October 4, 2004, issued a similar order in
the criminal matter before him, docket entry # 36 in Cr. No. 04-
231, and Schwartz posted $100,000 bail and was released to a
halfway house.  He was allowed to visit Cedrone's offices to
prepare his defense, and perambulate in other circumscribed
manners.  See docket entry # 181; see also docket entry # 38 in
Cr. No. 04-231.  On November 11, 2004, a jury convicted Schwartz
of two counts of bank fraud and seven counts of wire fraud before
Judge Bartle in Cr. No. 04-231.  Judge Bartle did not revoke at
that time and sentenced Schwartz on May 18, 2005 -- after the
trial before us concluded.

Voir dire in Schwartz's criminal matter before us began
on April 4, 2005, which was a year and three days after we granted
Schwartz's motion to represent himself.  At trial, "Schwartz
[himself] conducted voir dire, delivered an opening statement,
conducted direct and redirect testimony of his own witnesses,

cross-examined the Government's witnesses, made objections, and gave a closing argument." _Schwartz_, 315 F. App'x at 416 n.1 (internal citations omitted).  On April 22, 2005, a jury convicted Schwartz of several counts and we revoked his bail at that time. We sentenced Schwartz on July 26, 2005 at a proceeding where he again represented himself.  July 26, 2005 Tr. 2:11 (Docket Entry # 391) (noting "STEVEN ALLEN SCHWARTZ, Pro Se" under "APPEARANCES"); _see generally id._; _United States v. Schwartz_, 379 F.Supp.2d 716 (E.D. Pa. 2005). It bears re-emphasis that Schwartz _never_ attempted to revisit the representation issue from April 1, 2004 through his sentencing on July 26, 2005.

As noted, Schwartz appealed his conviction and sentence to our Court of Appeals.  Cedrone represented Schwartz in that proceeding, but Schwartz continued to file _pro se_ submissions. Third Circuit Court of Appeals Docket No. 05-2770.  Indeed, the Clerk for our Circuit reminded Schwartz that only counseled submissions would be accepted for filing and that all submissions should be directed to the Clerk and not the judges.  _See, e.g._, November 1, 2005 Docket Order (citing Third Circuit Loc. App. R. 31.3 & 25(a)(1)).  Despite this admonition, Schwartz continued to file _pro se_ submissions.  After his counsel filed a brief on the consolidated appeal, Schwartz insisted on filing a _pro se_ brief of

his own.  See Nov. 14, 2005 entry on Third Circuit docket.  Our
Court of Appeals "lodged" Schwartz's pro se supplemental brief on
April 13, 2007, noted that the document would be forwarded to the
merits panel, but clarified that it would only be filed upon the
panel's order.

In Schwartz's counseled brief to our Court of Appeals on
direct appeal, appellate counsel Cedrone argued that this Court
"(1) violated [Schwartz's] Sixth Amendment right to represent
himself at trial, (2) violated his Sixth Amendment right to
confront witnesses against him, (3) improperly admitted evidence,
and (4) failed to consider the factors enumerated in 18 U.S.C. §
3553(a) when imposing sentence."  Schwartz, 315 F. App'x at 415.
Our Court of Appeals rejected each of these contentions.  See id.
at 415-420.

In his prolix, unsolicited and then-unauthorized pro se
supplemental brief to our Court of Appeals on that same appeal,
Schwartz contended that, as to our handling of his criminal
prosecution, we erred in denying his three recusal motions because
we were, at bottom, biased against him, displayed that bias in
proceedings, and received "false and inflammatory extra judicial
information regarding the proceedings".  Pro Se Supp. Br. 148-159.
He reiterated and expanded his counseled Sixth Amendment claim

16

that "[t]hroughout Mr. Schwartz'[s] direct examination, cross-examination, re-direct and re-cross the trial judge refused to allow Appellant to appear before the jury as his own lawyer." <u>Id.</u> 160-161. Schwartz claimed that we disparaged counsel at two pre-trial hearings leaving him with no choice but to defend himself <u>pro</u> <u>se</u> and threatened him with "unlawful arrest". <u>Id.</u> 162-163. Schwartz alleged that we "denied [him] a fair trial by giving the jury the impression that [we] believed Mr. Schwartz to be guilty." <u>Id.</u> 164; <u>see also</u> <u>id.</u> ("The Trial Judge Violated Mr. Schwartz'[s] Due Process Rights By Using His Mannerisms and Acidic Tone to Convey to the Jury His View That Appellant Was Guilty").

In addition, Schwartz argued that we improperly instructed the jury on certain questions of law and refused to conduct his requested <u>voir</u> <u>dire</u>. <u>Id.</u> 182-189. He asserted that we directed our Deputy Clerk to interfere with jury deliberations. <u>Id.</u> 190. He elaborated upon his counseled arguments that we erred in admitting certain Fed. R. Evid. 404(b) evidence. <u>Id.</u> 191-195. Schwartz also averred that our "Stewardship of This Case Violated [his] Fourteenth and Sixth Amendment Rights to a Meaningful Opportunity to Prepare and Present a Complete Defense", <u>id.</u> 196, because we: (1) denied his absolute right to interview witnesses, <u>id.</u> 197; (2) denied him his right to testify on his own behalf,

17

id. 198; (3) refused to issue subpoenas to obtain certain documents and witness appearances and appoint certain experts to aid his defense, id. 199-209; and (4) denied him Internet and telephone access, id. 209. Schwartz also claimed that we erred in denying his continuance request, id. 221-222, and advanced additional claims related to his sentencing, id. 223-225.

As to the Government's conduct, Schwartz claimed that it used contradictory theories against him in two separate prosecutions thus depriving him of due process and rendering his trial fundamentally unfair. Id. 167-170. He alleged that the Government improperly used offensive collateral estoppel against him, or improperly used Fed. R. Evid. 404(b) evidence against him. Id. 171-178. Schwartz contended that the prosecutor improperly forced him to testify as to the veracity of Government witnesses and forced him to call Government witnesses liars. Id. 179-181. Moreover, he asserted that the Government knowingly presented perjured testimony. Id. at 194, 207 n., 210-211.

On March 4, 2009, our Court of Appeals granted Schwartz's motion to file his pro se supplemental brief and "considered the arguments Schwartz raised in his pro se supplemental brief and f[ound] them to be meritless." Schwartz, 315 F. App'x at 422 n.6.

Schwartz then filed a petition for writ of <u>certiorari</u> to the United States Supreme Court. That Court ordered the Solicitor General to respond to the four issues presented in Schwartz's petition: whether (1) Federal Rule of Evidence 902(11) violated the Confrontation Clause; (2) we committed reversible plain error in admitting certain F.D.I.C. certificates; (3) a requirement that a <u>pro</u> <u>se</u> defendant testify on direct examination via questions posed by standby counsel rather than narrative testimony violated the Sixth Amendment; and (4) any use made by the Government of petitioner's bail hearing testimony necessitated a new trial. <u>See</u> Supreme Court Docket No. 09-7923, filed March 29, 2010. The Solicitor General answered each of these questions in the negative in her twenty-two page response. <u>Id.</u> Schwartz filed a fourteen page reply. <u>See</u> Supreme Court Docket No. 09-7923, filed April 15, 2010. On April 26, 2010, the Supreme Court denied Schwartz's petition for a writ of <u>certiorari</u>. <u>Schwartz v. United States</u>, 130 S. Ct. 2371 (2010).

IV.  <u>Schwartz's Ineffective Assistance of Trial Counsel Claims</u>

Schwartz's ineffective assistance of trial and appellate counsel claims are properly presented for the first time in his § 2255 motion. <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003). In this section, we address Schwartz's ineffective

assistance of trial counsel claims only and conclude that they are
without merit.  The record shows that pursuant to Schwartz's own
demand he duly extinguished his Sixth Amendment right to counsel
by knowingly, voluntarily, and intelligently choosing to represent
himself in pre-trial preparation and at trial and sentencing.  Now
that his jury conviction and sentence have been affirmed by our
Court of Appeals -- in a disposition the Supreme Court left
undisturbed -- he seeks to retreat from his own pro se effort to
exculpate himself at trial by scapegoating his one-time trial
counsel who became his standby counsel.

### A.   The Ineffective Assistance
of Trial Counsel Standard

The Supreme Court held in Strickland v. Washington, 466 U.S.
668, 690-92 (1984), that to state a claim for ineffective
assistance of counsel a petitioner must establish both that (1)
counsel's performance was deficient, i.e., unreasonable under
prevailing professional standards, and (2) such deficient
performance prejudiced the defense.  Under the first prong,
"[j]udicial scrutiny must be highly deferential," and courts "must
indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance".  Id. at
688-89.  To prove prejudice a petitioner "need not show that

counsel's deficient performance 'more likely than not altered the outcome in the case' -- rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94, and Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001)).  In ruling on a § 2255 petition we may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

Our Court of Appeals has held that "a defendant who chooses to represent himself must be allowed to make that choice, even if it works 'ultimately to his own detriment.'" United States v. Peppers, 302 F.3d 120, 130 (3d Cir. 2002) (quoting Faretta v. California, 422 U.S. 806, 834 (1975)).  And a defendant's right to effective assistance of trial counsel exists so long as the defendant does not knowingly, intelligently, and voluntarily waive it.  The Sixth Circuit has persuasively reasoned that "[b]y exercising [one's] constitutional right to present his own defense, a defendant necessarily waives his constitutional right to be represented by counsel.  See Faretta, [422 U.S. at 834].  Logically, a defendant cannot waive his right to counsel

and then complain about the quality of his own defense.  Id. [at
834 n.46]", Wilson v. Parker, 515 F.3d 682, 696 (6th Cir. 2008).

Moreover, pro se criminal defendants enjoy no
constitutional right to standby counsel or hybrid representation.
See United States v. Tilley, 326 F. App'x 96, 97 (3d Cir. 2009)
(holding pro se defendant lacks constitutional right to standby
counsel and to have standby counsel raise objections on his behalf
and that pro se defendant cannot complain of the quality of his
own defense); see also United States v. Morrison, 153 F.3d 34, 55
(2d Cir. 1998) (holding pro se defendant cannot claim ineffective
assistance where standby counsel "was in reality, as well as in
name, only that"); and see 41 Geo. L.J. Ann. Rev. Crim. Proc. 531-
532 & nn. 1588-1589 (2012) (collecting cases).

The Supreme Court has described the Sixth Amendment
right to counsel as "a shield to protect [a defendant] against
being 'haled into court' by the [Government] and stripped of his
presumption of innocence".  Ross v. Moffitt, 417 U.S. 600, 610-11
(1974).  That being said, "[a] defendant has no right to
manipulate his right [as a sword] for the purpose of delaying and
disrupting the trial."  United States v. Yagow, 953 F.2d 427, 431-
32 (8th Cir. 1992) (internal quotation marks and citations
omitted).  Moreover, where a defendant duly effectuates a waiver

22

of his Sixth Amendment right and de-shields himself of its

protections, he cannot, in a motion for <u>habeas corpus</u> relief, take

cover behind the very right he waived long ago.  <u>See</u> <u>Sullivan v.</u>

<u>Pitcher</u>, 82 F. App'x 162, 165-66 (6th Cir. 2003).

B.    Threshold Matter: Schwartz's
      <u>Sixth Amendment Right to Trial Counsel Waiver</u>

We first address our April 1, 2004 Sixth Amendment

waiver colloquy because whether Schwartz lawfully waived his Sixth

Amendment right necessarily informs whether <u>Strickland</u> applies

and, to the extent it does, our analysis of his ineffective

assistance of trial counsel claims under it.  In addition, aspects

of Schwartz's ineffective assistance of appellate counsel claim

that we address below rises or falls on the adequacy of this

colloquy.  <u>See</u> Pet. 38 ¶ 1.

Our April 1, 2004 colloquy with Schwartz that we

recounted above tracks our Court of Appeals's instruction on the

necessary substance of a "sufficiently penetrating inquiry [a

district court must employ] to satisfy itself that the defendant's

waiver of counsel is knowing and understanding as well as

voluntary."  <u>Peppers</u>, 302 F.3d at 130-31, 136-37 (providing a list

of fourteen questions to guide a district court's Sixth Amendment

waiver colloquy taken from the Federal Judicial Center's <u>Benchbook</u>

23

<u>for U.S. District Court Judges</u> § 1.02 (4th ed. 2000)).  Our Court

of Appeals has described <u>Peppers</u>'s fourteen questions as providing

a "useful framework" to guide a district court's inquiry into the

knowing and voluntary nature of a defendant's request to proceed

<u>pro se</u>.  <u>Id.</u> at 136-37; <u>see</u> <u>United States v. Thomas</u>, 357 F.3d 357,

364 (3d Cir. 2004) (describing <u>Peppers</u> as not "mandat[ing] a

certain 'script,' especially in situations where [the court is]

confident that the defendant [i]s cognizant of the potential

problems he would face").  The Eleventh Circuit in <u>Cross v. United</u>

<u>States</u>, 893 F.2d 1287, 1290 (11th Cir. 1990), bluntly explained

that "[i]n recognition of the thin line that a district court must

traverse in evaluating demands to proceed pro se, and the

knowledge that shrewd litigants can exploit this difficult

constitutional area by making ambiguous self-representation claims

to inject error into the record, this Court has required an

individual to clearly and unequivocally assert the desire to

represent himself."

        The record here unequivocally shows that we "peppered"

Schwartz with the waiver questions our Court of Appeals

recommends, and elaborated and modified them in light of his

specific answers at the hearing.  <u>Compare</u> <u>Peppers</u>, 302 F.3d at

136-37, <u>with</u>, April 1, 2004 Hearing Tr. 10-33.  We canvassed the

24

charges against him and the sentencing exposure that he faced.
Given the practical difficulties posed by his pre-trial custody,
we painstakingly reviewed with Schwartz the very real difficulty
posed by his desire to engage in behind-bars trial preparation.
In view of the gravity of the issues our colloquy highlighted, we
would not allow Schwartz to divert our attention away from the
core issue that brought us together at that hearing.  We
repeatedly asked Schwartz if he would like us to appoint new
counsel from the Criminal Justice Act panel and he repeatedly
refused -- further fortifying in our mind his unshakeable resolve
to represent himself.[6]

Even with the benefit of eight years' hindsight, we
conclude that our April 1, 2004 colloquy with Schwartz --
following his clear and steadfast expression of his desire to
proceed <u>pro</u> <u>se</u> -- adequately canvassed "'the nature of the charges
[against him], the range of possible punishments [he could face],
potential defenses [he could assert], technical problems that [he]
may encounter, and any other facts important to a general
understanding of the risks involved.'"  <u>See</u> <u>Peppers</u> at 132
(quoting <u>Virgin Islands v. Charles</u>, 72 F.3d 401, 404 (3d Cir.

_____

[6] As in <u>Peppers</u>, Schwartz's competency to stand trial was not
in issue, and we had no reason to address it.  <u>See</u> 302 F.3d at 132
n.11.

1995)).  Our colloquy bore no resemblance to the "less than

adequate" one that Schwartz successfully gamed in his appeal of a

jury conviction on eight counts of harassment by communication in

the Montgomery County Court of Common Pleas.  See Pennsylvania v.

Schwartz, No. 582 EDA 2000 (Pa. Super. Ct. Sept. 3, 2002)

(attached as an exhibit to docket entry # 54).[7]  There can be no

doubt that Schwartz knowingly, intelligently, and voluntarily

waived his Sixth Amendment right to trial counsel here.

> C.   Schwartz's Pre- and Post-Sixth Amendment
>      Waiver Ineffective Assistance of Counsel Claims

> 1.   Pre-Waiver Claims

We first turn to Schwartz's claim that Cedrone rendered

constitutionally infirm assistance of counsel from the date of his

entry of appearance on January 24, 2003 until April 1, 2004 -- the

_____

[7] See also note 7 in Schwartz, 379 F. Supp. 2d at 719, where we
observed Schwartz's pro se success in actually convincing a
Tarrant County, Texas civil suit judge "to press on to trial even
though the Government had moved that court to stay proceedings
pending the outcome of this prosecution."  We invoked our
authority under 28 U.S.C. § 1651 to stop this astounding intrusion
into this Court's criminal processes.

Indeed, Schwartz's success as a pro se litigant has not
escaped the attention of the region's leading newspaper.  As the
Philadelphia Inquirer reported on May 5, 2003, "Steven A. Schwartz
is not a lawyer, but he sometimes is amazingly skillful at
litigating his own legal battles."  Stuart Ditzen, A Frequent
Accuser Faces A Fraud Charge, Philadelphia Inquirer, May 5, 2003,
at A01, reproduced at 2003 WLNR 14763232.

day Schwartz waived his Sixth Amendment right and Cedrone assumed his standby counsel role.  We find that this category of Schwartz's ineffective assistance of counsel claims -- Issue I, subparts A-C, and paragraphs 1(a)-(b) of subpart H of his petition – fails to satisfy both _Strickland_'s deficient representation and prejudice prongs and thus fail for two independent but equally fatal reasons.

First, Schwartz cannot demonstrate that Cedrone's performance was deficient because Schwartz's vague, conclusory allegations on this theme are contradicted by his own March 12, 2004 letter to us and our April 1, 2004 colloquy at the hearing on his self-representation.  As we noted earlier, Schwartz went out of his way to tell us that "[n]othing in []his request [to proceed _pro se_] should be construed to reflect negatively on Mr. Cedrone." March 12, 2004 Letter.  Moreover, at the April 1, 2004 hearing, Schwartz did not blame _Cedrone_ for his pre-trial frustrations -- he blamed _us_.  He refused to allow us to appoint him any other attorney from the Criminal Justice Act panel and stated that "[a]s long as [we were going to be] the judge on this case, _there is no_ _attorney in the Eastern District of Pennsylvania_ . . . [who could] provide [him] with effective representation", April 1, 2004 Tr. 31:16-19 (emphasis added).  Schwartz's letter and hearing

27

testimony also pointed fingers at the Government for allegedly frustrating his defense.  <u>See</u> March 12, 2004 Letter; April 1, 2004 Tr. 19:2-14, 21:9-14.[8]

Our scrutiny of counsel's performance "must be highly deferential", and the Supreme Court's admonition that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence", <u>Strickland</u>, 466 U.S. at 689, is especially apt here because only <u>after</u> Schwartz assumed sole responsibility for trial preparation and the presentation of evidence at trial (and lost) did he complain about Cedrone's fleeting representation.  Since Schwartz disclaimed any negative reflection on Cedrone and failed to allege any such deficiencies on the record at the April 1, 2004 hearing, the bases for his pre-waiver claims -- to say nothing of his <u>chutzpa</u> -- are frivolous under <u>Strickland</u>'s first prong, thereby foreclosing relief.  <u>See</u> <u>Booth</u>, 432 F.3d at 545-46.

Second, and equally fatal, is Schwartz's failure to

---

[8] Schwartz was upset that Cedrone had allegedly "been wrong on every single thing he has told me that [we] would do".  April 1, 2004 Tr. 25:24-25.  But, as Justice Douglas once remarked, "[t]he law is not a series of calculating machines where definitions and answers come tumbling out when the right levers are pushed." William O. Douglas, <u>The Dissent, A Safeguard of Democracy</u>, 32 J. of Am. Jud. Soc. 104, 105 (1948).  Cedrone could hardly be faulted for incorrectly guessing our decisions on every fact-intensive issue that came before us.

allege _any_ discernible prejudice that undermines confidence in the outcome. Schwartz assumed sole responsibility for his defense more than one year before we empaneled the jury -- he interviewed witnesses in anticipation of trial, vigorously litigated a wide array of pre-trial motions, conducted voir dire, delivered an opening statement, conducted direct and redirect testimony of his own witnesses, cross-examined the Government's witnesses, made objections, and gave a closing argument. He has failed to explain how Cedrone hamstrung his defense to create _any_ "probability sufficient to undermine confidence in the outcome" at trial. See Jacobs, 395 F.3d at 105.

Schwartz's prejudice argument rests on a speculative causation theory that we may properly disregard. Thomas, 221 F.3d at 437 ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court"). See also Williams v. Taylor, 529 U.S. 363, 391-92 (2000) ("there are . . . situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice'"); Lockhart v. Fretwell, 506 U.S. 364, 369-70 & n.2 (1993) (in some circumstances, "a[ Strickland] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair

or unreliable, is defective" and could "grant the defendant a windfall to which the law does not entitle him").

On April 1, 2004 -- at the hearing on his request to represent himself that convened one year and three days before Schwartz's trial started -- Schwartz assumed the risks that we specifically warned him about by preparing for trial while in custody. Our colloquy with Schwartz made it clear that we then believed he would remain in jail through trial. April 1, 2004 Tr. 24:2 ("You're going to be in jail until trial."). Under these circumstances, we told him that he would have particular difficulty interviewing witnesses, participating in pre-trial discovery, and investigating issues material to his defense. In October of 2004 -- six months before he went to trial -- we, along with Judge Bartle, granted Schwartz's motions for pretrial release on bail pursuant to certain conditions. Once released from the Federal Detention Center, Schwartz had greater latitude in preparing his defense and interviewing and researching witnesses in the months leading up to his April 2005 trial. See docket entry # 213 n.2. To be sure, he did not always maximize the opportunities his enhanced freedom gave him to prepare for trial. See docket entry # 298 ¶ 1. We informed him about the procedures he could use to subpoena documents and witnesses. See,

<u>e.g.</u>, docket entry # 244 ¶¶ i-k.  We also granted Schwartz's

request to travel to New Hampshire to interview a witness he

claimed was essential to his defense.  Docket Entries ## 233, 244.

Schwartz fails to articulate <u>how</u> Cedrone's pre-waiver

conduct more than one year before the start of trial prejudiced

his ability to strategize and investigate the law once Schwartz

opted to proceed on his own.  For example, while Schwartz was

still at the Federal Detention Center he had no difficulty

fashioning a pre-waiver <u>pro</u> <u>se</u> recusal motion.  He also cannot

take cover in the fact that he had limited law library access

while in full custody.  The Supreme Court has held that <u>pro</u> <u>se</u>

criminal defendants do not enjoy a clearly-established Sixth

Amendment right to law library access before trial to conduct

research.  <u>See</u> <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10 (2005) (<u>per</u>

<u>curiam</u>); <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996) (there exists no

"abstract, freestanding right to a law library or legal

assistance"); <u>see also</u> 41 <u>Geo. L.J. Ann. Rev. Crim. Proc.</u> 532 & n.

1590 (2012) (collecting Courts of Appeal cases).  Moreover, we

warned Schwartz about his potentially limited law library access

in our extensive April 1, 2004 colloquy.  April 1, 2004 Tr. 20:15-

16.  And in the about six months that Schwartz was living in the

halfway house, Schwartz was able to visit his standby counsel's

office on a daily basis to prepare his defense, docket entry #
181.

Schwartz chose to assume control of his defense and he
must bear the fruits of his decision even, as here, if it was
"'ultimately to his own detriment'".  See Peppers, 302 F.3d at 130
(quoting Faretta, 422 U.S. at 834).  Schwartz's allegation that
Cedrone's brief representation before Schwartz waived his right to
trial counsel amounts to speculative prejudice and is fatal to his
pre-waiver ineffective assistance of counsel claims.[9]  The Sixth
Circuit's persuasive reasoning in Wilson v. Parker, 515 F.3d 682
(6th Cir. 2008), bolsters our conclusion.  Wilson held that
counsel's failure to "begin a[n] . . . investigation . . . was not
prejudicial", and thus inadequate to satisfy Strickland's second
prong, in a capital murder, rape, robbery, and conspiracy case
where the defendant "waived his right to counsel on the first day
of trial and thereafter controlled his defense, including deciding
whether he or [standby counsel] would cross-examine witnesses and
make opening or closing statements to the jury."  Id. at 698-99.

---

[9] Paragraph 1(a)-(b) and 3 of subpart H allege that it was
"Cedrone's plan from the outset not to represent Schwartz", Pet.
33 ¶ 1, and that Cedrone assigned a paralegal (who left his law
practice) to plan and research his case leaving nobody to
represent Schwartz.  Our no pre-waiver prejudice conclusion
applies to this fanciful claim, as well.

The Sixth Circuit concluded that "the fact of the waiver [of the Sixth Amendment right on the first day of trial] ma[de] it virtually impossible to assess whether such [pre-waiver] conduct [by his then-counsel] was prejudicial." Id. at 699.

Schwartz's case supplies even stronger grounds for concluding that it is well-nigh impossible to assess whether Cedrone's pre-waiver conduct was more prejudicial than those the Sixth Circuit identified in Wilson. First, Schwartz waived his Sixth Amendment rights more than one year before the start of trial and was able to control his defense preparation and strategy for months before the case went to the jury. By contrast, the Wilson defendant waived his Sixth Amendment rights on the first day of trial and thus he did not have the same absolute control over the pre-trial defense preparation that Schwartz had.

It is also worth recalling that Schwartz was persistent and direct in his demand to proceed pro se long before trial was scheduled. The Wilson defendant, by contrast, merely "indicated throughout the pre-trial period that he did not want [any attorney] to represent him". Id. at 699.[10] It bears repeating that Schwartz controlled his fifteen-day trial and represented

_____

[10] In addition, for the reasons explained above, Schwartz's Sixth Amendment waiver was even more flat-footed than the waiver the Sixth Circuit upheld in Wilson. 515 F.3d 692-96.

33

himself at sentencing much like the Wilson defendant's "exercise[ of] control over the conduct of his trial" and "the actual penalty phase". Id. Lastly, Schwartz and the Wilson defendant were both convicted based on "overwhelming" evidence. Id. Notably, our Court of Appeals considered and rejected as meritless Schwartz's pro se arguments about the sufficiency of the evidence against him in this case.

Wilson thus fortifies our holding that Schwartz, having waived his right to counsel more than a year before trial and after having more than ample time to conduct his pre-trial preparation, simply "cannot demonstrate prejudice from [Cedrone's] pre-waiver conduct". See id. Our conclusion here is of course based solely on the specific facts of the case as we find them here, as we agree with the Sixth Circuit that "[a]lthough there may be cases in which the facts indicate that pre-waiver defense conduct sufficiently prejudiced the defendant to sustain an ineffective assistance claim, this is not such a case." Id.

### 2. Post-Waiver Claims

Schwartz's ineffective assistance of counsel claims regarding pre-trial preparation and at trial and sentencing (Issue

I, subparts D-G, I, and paragraphs three and seven of subpart H[11])
are unavailing because he "cannot now 'complain that the quality
of his own defense amounted to a denial of effective assistance of
counsel.'" Tilley, 326 F. App'x at 97 (quoting Faretta, 422 U.S.
at 834 n.46); see Wilson, 515 F.3d at 697 ("To the extent
[defendant's standby counsel] failed to act during trial, Wilson
merely suffered the consequences of his decision to proceed pro
se."). As we wrote over eight years ago, "Schwartz has no one to
blame but himself" for the categorical failure of all ineffective
assistance of counsel claims arising after he waived his Sixth
Amendment right to trial counsel. See March 28, 2005 Order ¶ 1
(denying Schwartz's request to postpone trial because his late-in-
the-game acceptance of the Government's longstanding request to
review and copy unproduced documents did not warrant a
continuance). Schwartz cannot game the system by picking up his
Sixth Amendment shield after he cast it aside on April 1, 2004, as
the Eleventh Circuit's hypothetical "shrewd litigant" might be

---

[11] Paragraphs three and seven of subpart H claim that Cedrone
"lied . . . when he informed Schwartz that he would act as co-
counsel with Schwartz", Pet. 34-35 ¶¶ 3, 7, but there is no Sixth
Amendment right to standby or hybrid counsel where, as here, a
criminal defendant chooses to proceed pro se. Moreover, to the
extent Schwartz alleges "Cedrone pressured Schwartz to terminate
the Bosa deposition", id. 35 ¶ 7, Schwartz had already waived his
Sixth Amendment right to counsel at the time of Bosa's deposition
and was thus in complete control of his defense.

expected to try to do.  See United States v. Low, 401 F. App'x
664, 669 (3d Cir. 2010) (Sloviter, J., dissenting) (concluding
that defendant "was indeed gaming the system", a likelihood the
majority itself acknowledged, and "should not [be] permit[ted] . .
. to do so" where district court warned defendant that his failure
to cooperate with his fourth attorney would result in his
proceeding pro se and the district court warned the defendant of
the dangers of representing himself); Cross, 893 F.2d at 1290.

>      D.    Schwartz's Ineffective Assistance of
>            Counsel Claims Arising From Alleged
>            Breach of the Attorney-Client Privilege

Schwartz also contends that Cedrone violated attorney-
client privilege (Issue I, subpart H) and, thus, his Sixth
Amendment right to effective assistance of counsel.  Pet. 33-35.
These claims, too, are meritless.

The Ninth Circuit has explained that it "need not decide
whether the attorney-client privilege has a constitutional
dimension in the criminal context; . . . [though it did] note . .
. that doing away with the privilege in all criminal cases would
raise a nontrivial question whether defendants would still be
getting effective assistance." Bittaker v. Woodford, 331 F.3d
715, 723 n.7 (9th Cir. 2003) (en banc) (emphasis in original)
(citing cases); United States v. Bauer, 132 F.3d 504, 508-10 & n.4

(9th Cir. 1997) (noting that "a violation of the attorney-client privilege is not an error of constitutional magnitude" in and of itself, and "[i]ssues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law").

There are two additional points that require prefatory emphasis. First, Schwartz's petition does <u>not</u> allege that the Government purposefully invaded his attorney-client relationship such that we are to presume prejudice. <u>See, e.g.</u>, <u>United States v. Kennedy</u>, 225 F.3d 1187, 1194 (10th Cir. 2000); <u>United States v. Levy</u>, 577 F.2d 200, 208-09 (3d Cir. 1978); <u>see also</u> <u>Reali v. Abbot</u>, 90 F. App'x 319, 322-24 (10th Cir. 2004). Nor does Schwartz contend that his sometime-counsel's direct testimony about confidential attorney-client communications was ever presented at trial. <u>See, e.g.</u>, <u>Bauer</u>, 132 F.3d at 508-10; <u>Nickel v. Hannigan</u>, 97 F.3d 403, 408-09 (10th Cir. 1996). Schwartz's attorney-client privilege contentions are grounded in allegations of Cedrone's conduct outside of the trial testimony context.

We now entertain each of Schwartz's allegations on this theme and dispose of them in turn. First, Schwartz alleges that Cedrone breached the privilege by advising Michelle Poll that Schwartz's finances were under criminal investigation thus leading

her to contact federal authorities who then initiated Cr. No. 04-231 before Judge Bartle.  As a result, Poll became "an extremely damaging witness against Schwartz at trial", Pet. 34 ¶ 2, though his motion does not directly tell us the trial to which he refers.[12]

Schwartz's allegation that Cedrone's alleged deficiency[13] caused prejudice to him here because Poll became "an extremely

---

[12] To the extent Schwartz is attacking his conviction before Judge Bartle on this basis, that is not an issue we can decide and one that indeed Judge Bartle appears to have already rejected. See United States v. Schwartz, No. 04-231, 2012 WL 1694292, at *4 (noting Schwartz's ineffective assistance violation of attorney-client privilege argument), *12 & text accompanying n.14 (E.D. Pa. May 15, 2012) (Bartle, J.).

[13] Schwartz's claim of Cedrone's alleged deficient performance is dubious.  Poll testified that she retained an attorney when Schwartz was "verbally abusive on the telephone" towards her, Apr. 8, 2005 Day 5 Tr. 123:11, that her attorney was forced to eventually call Cedrone, id. 123, that she decided to call the Fraud Department at her bank, id. 124, and that she eventually wrote a complaint letter to the Pennsylvania Attorney General about Schwartz, id. 125.  There is no testimony from her in the trial record that Cedrone was the one who told her that "Schwartz'[s] finances were under [criminal] investigation by Federal prosecutors in Philadelphia."  Pet. 34 ¶ 2.  Indeed, the Government's investigation into Schwartz's finances was a matter of public record even before Cedrone was appointed as Schwartz's counsel.  See Local News Philadelphia & Its Suburbs, Metropolitan Area News in Brief, Philadelphia Inquirer, January 17, 2003, at B3, reproduced at 2003 WLNR 3777817 (describing the charges against Schwartz and his mother).  Our Court of Appeals has held that where matters of public record are concerned, attorney-client privilege is not implicated.  See United States v. Meyers, 38 F. App'x 99, 101 (3d Cir. 2002); see also Babcock & Wilcox Co. v. Foster Wheeler Corp., 457 F.2d 1307, 1309 (3d Cir. 1972) (Van Dusen, J., concurring in part and dissenting in part).

damaging witness" at his trial is conclusory.  More to the point,

the record contradicts this claim so we need not credit it.

Schwartz thus fails to satisfy Strickland's first prong.

Scwhartz's claim is also inadequate to satisfy

Strickland's prejudice prong.[14]  Michelle Poll's Day Five testimony

occupies only seventeen transcript pages.  April 8, 2005 Day 5 Tr.

110-127; docket entry # 400.  Schwartz's cross-examination of this

allegedly "extremely damaging witness" fills less than two of

those pages, id. 126-127, of which only a small portion of his

examination was relevant and admitted into evidence.  Poll's

testimony, when considered in light of all the other evidence in

Schwartz's lengthy trial record, casts no shadow on our confidence

in the jury's outcome in this matter.  Our Court of Appeals's

wholesale rejection of Schwartz's insufficiency of the evidence

_____

[14] Though we find that there was no prejudice for the reasons
given above, we also note that Poll's testimony was, at most,
derivative of Cedrone's alleged breach of the attorney-client
privilege.  Courts have been reluctant to extend the fruit-of-the-
poisonous-tree derivative evidence suppression doctrine to non-
constitutional violations like Schwartz's alleged evidentiary
claim.  See Nickel, 97 F.3d at 408-09 (reasoning that there does
not exist a "fruit of the poisonous tree" doctrine in breach of
attorney-client privilege cases); United States v. Warshak, 631
F.3d 266, 294 (6th Cir. 2010) (declining to extend the derivative
evidence-suppressing fruit-of-the-poisonous-tree doctrine beyond
context of constitutional violations); United States v.
Squillacote, 221 F.3d 542, 560 (4th Cir. 2000) (same).  Moreover,
Schwartz did not object to the admissibility of Poll's testimony
at trial nor did he raise this issue on direct appeal.

arguments, propounded in his <u>pro</u> <u>se</u> supplemental brief, fortifies

our conclusion.

Second, Schwartz claims that "Cedrone violated [his]

counsel rights when he advised Schwartz it [w]as absolutely lawful

to engage in the conduct outlined in the 04-231 case." Pet. 34 ¶

4. But we need not credit this vague and conclusory allegation.

Schwartz does not, for example, allege the date or time that

Cedrone advised Schwartz of this alleged information, thus we do

not know if this advice was delivered before or after he waived

his Sixth Amendment right to counsel. We will not speculate about

a fact Schwartz would like us to believe he really "knows".

Third, Schwartz alleges that he suffered prejudice

because Cedrone was "laboring under an actual conflict of interest

due to" his claims that Cedrone (1) did not want to represent him,

(2) told Poll that Schwartz's finances were under investigation,

(3) lied to Schwartz about being co-counsel, and (4) improperly

advised him about the lawfulness of certain actions lacks any

factual basis. <u>Id.</u> 35 ¶ 5. Though <u>Cuyler v. Sullivan</u>, 446 U.S.

335, 348-50 (1980), held that a defendant can demonstrate a Sixth

Amendment violation by showing that counsel "actively represented

conflicting interests", Schwartz fails to identify <u>what</u>

conflicting interests Cedrone was representing here. Thus, "he

has not established the constitutional predicate for his claim of ineffective assistance." Id. at 350. To the extent Schwartz was "conflicted" with Cedrone, his alleged "conflict" (as he uses the term) does not implicate the category of representation conflicts that may trigger Sixth Amendment concerns. See Pro Se Supp. Br. 162 (referring to his relationship with Cedrone: "Appellant lost all faith in counsel and certainly was now conflicted with counsel, and believed that he had absolutely no choice but to appear pro se throughout the proceedings").

Still more conclusory is Schwartz's contention that "Cedrone continually violated privilege and provided AUSA Kelly with information that Schwartz entrusted him with for the overall defense of the prosecution's case." Pet. 35 ¶ 6. Schwartz neither gives specific information about the content of any entrusted information that he alleges was improperly shared, nor points to any one event or occasion where such an imagined transfer took place.

Finally, Schwartz contends that Cedrone informed the Government that "[he] would eventually represent himself", thus prejudicing him by allowing the Government to "use[] said information to withhold discovery, manipulate the process to assist Cedrone to abandon Schwartz and plan the timing of her

filing of new charges", id. 34 ¶ 1(c).  Our Court of Appeals has already rejected Schwartz's claims of Government misconduct and, for the reasons we will soon discuss, we decline to revisit those issues here.  Accord Perry v. Kemna, 356 F.3d 880, 887-88 (6th Cir. 2004) ("conced[ing] that [attorney's] disclosures may have had some negative impact on [defendant's] defense" but finding no prejudice under Strickland's second prong because the attorney "did not testify . . . [and] the theory that his disclosures to the prosecution [directly, as opposed to a third-party as Schwartz alleges,] altered the jury's verdict [because it was] too speculative to satisfy the 'prejudice' requirement of an ineffective-assistance claim").

V.   Schwartz's Claims of Ineffective Assistance of
     Appellate Counsel, Trial Process Abuse
     and Government Misconduct, and Actual Innocence

     A.   Ineffective Assistance of Appellate Counsel

     We hold that Schwartz's ineffective assistance of appellate counsel claims (Issue I, subpart J) fail because his appellate proceedings were fair, his appellate counsel did not provide deficient representation or cause him any prejudice, and his claims fail as a matter of legal pleading sufficiency.[15]

---

[15] Accord Schwartz, 2012 WL 1694292, at *12 (Bartle, J.) ("Under Strickland, [the same] appellate counsel [implicated here] was

1.   The Due Process Right to Effective
Assistance of Appellate Counsel

The Supreme Court in <u>Evitts</u> found it "hardly novel" that
"[a] first appeal as of right . . . is not adjudicated in accord
with due process of law if the appellant does not have the
effective assistance of an attorney".  469 U.S. at 396-97.  The
Court reasoned that <u>Anders v. California</u>, 386 U.S. 738 (1967), and
<u>Entsminger v. Iowa</u>, 386 U.S. 748 (1967), involved cases where "the
petitioners . . . claimed that, although represented in name by
counsel, they had not received the type of assistance
constitutionally required <u>to render the appellate proceedings</u>
<u>fair</u>."  469 U.S. at 396-97 (emphasis added).  Our Court of
Appeals, among others, has held that federal criminal defendants
enjoy a Fifth Amendment right to effective appellate counsel.  <u>See</u>
<u>United States v. Cross</u>, 308 F.3d 308, 315 & nn.11-12 (3d Cir.
2002); <u>United States v. Baker</u>, 256 F.3d 855, 859 n.2 (9th Cir.
2001).

---

entitled to make strategic choices regarding the issues presented
on appeal and was not required to present every claim suggested by
Schwartz.  The fact that Schwartz submitted his own pro se
appellate brief, which the Court of Appeals considered and found
to be 'meritless,' demonstrates that Schwartz was not prejudiced
by his counsel's failure to raise the issues he now regards as
'dead bang' winning arguments.").

Our Court of Appeals in <u>Cross</u> summarized the Supreme Court's ineffective assistance of appellate counsel jurisprudence as teaching that:

> [Fifth Amendment d]ue process entitles a [federal] criminal defendant to the effective assistance of counsel on his first appeal as of right. <u>Evitts v. Lucey</u>, [469 U.S. 387, 396 (1985)]. The two-prong standard of <u>Strickland v. Washington</u>, [466 U.S. 668 (1984)], applies to a defendant's claim that his appellate counsel was ineffective [even though <u>Strickland</u> was premised on the Sixth Amendment right to effective assistance of counsel at trial]. <u>Smith v. Robbins</u>, [528 U.S. 259, 285 (2000)]; <u>Smith v. Murray</u>, [477 U.S. 527, 535-36 (1986)]; [<u>United States v. Mannino</u>, 212 F.3d 835, 840 n. 4 (3d Cir. 2000) (citations omitted)]. First, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, [466 U.S. at 688]. Second, he must show that there is "a reasonable probability" -- "a probability sufficient to undermine confidence in the outcome," but less than a preponderance of the evidence -- that his appeal would have prevailed had counsel's performance satisfied constitutional requirements. <u>Id.</u> at [694-95].

308 F.3d at 315 & nn.11-12. In <u>United States v. Mannino</u>, 212 F.3d 835, 844 (3d Cir. 2000), our Court of Appeals restated the ineffective assistance of appellate counsel prejudice standard in another helpful form: "[t]he test for prejudice under <u>Strickland</u> is not whether petitioners would likely prevail upon remand, but

whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal."

The Supreme Court has cautioned that judges are not "to second-guess reasonable professional judgments and impose on appointed [appellate] counsel a duty to raise every 'colorable' claim suggested by a client . . . . Nothing in the Constitution or [the Supreme Court's] interpretation of that document requires such a standard." <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983). Thus, our Court of Appeals has held that "[o]ne element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise." <u>Buehl v. Vaughn</u>, 166 F.3d 163, 174 (3d Cir. 1999).

### 2.    Application: Three Reasons Why The Ineffective Appellate Counsel Claims Fail

We conclude that Schwartz's ineffective assistance of appellate counsel claims fail for three separate but equally fatal reasons.  First, Schwartz's conduct on the appeal forecloses any claim that his Fifth Amendment right on his appeal was violated because his own participation in that appeal guaranteed that the appellate proceedings were fair.  Alternatively, Schwartz's conduct on the appeal forecloses a finding that he suffered prejudice under <u>Strickland</u>'s second prong.  We could also conclude

45

that Schwartz's § 2255 appellate counsel claims fail because the arguments he says counsel should have raised on direct appeal lack merit, or his allegations are otherwise vague and conclusory and contradict the record.

### a) The Appellate Proceedings Were Fair

As the Supreme Court explained in <u>Evitts</u>, the due process-based effective assistance of appellate counsel right is in place to assure the fairness of appellate proceedings. 386 U.S. at 396-97. It is through this lens that we must analyze Schwartz's appellate counsel claims. Having done so, there is not the slightest doubt that the appellate proceedings were anything other than fair.

Though there is no federal constitutional right to proceed <u>pro se</u> on direct appeal from a criminal conviction, <u>see Martinez v. Court of Appeal of Cal.</u>, 528 U.S. 152, 160 (2000), Schwartz conducted himself on appeal as if he had such a right despite our Court of Appeals's rules and orders to the contrary. The Third Circuit Clerk regularly warned Schwartz that the local appellate rules did not allow "dual" or "hybrid" representation. <u>See</u> Third Circuit Docket No. 05-2770 (Orders dated November 1, 2005, June 13, 2006, August 11, 2006, April 13, 2007, all citing Local Appellate Rule 31.1). The Clerk reminded Schwartz that all

properly filed arguments were to be submitted through counsel and not directly to the judges of the Court.  But Schwartz continued to bombard the Court of Appeals with pro se submissions, including a 167-page pro se supplemental brief.  This brief raised many issues that his counsel -- for reasons we are to presume were strategic in the absence of any evidence to the contrary, see Buehl, 166 F.3d at 169 -- elected not to raise in his own submission.[16]

On this record, to engage in a straight outcome-determinative Strickland prejudice analysis that asks whether our Court of Appeals "would have likely reversed and ordered a remand had the issue been raised on direct appeal" by appellate counsel Cedrone, Mannino, 212 F.3d at 844 (emphasis added), would require us to turn a blind eye to Schwartz's conduct before our Court of Appeals.

---

[16] The Supreme Court in Jones quoted Justice Jackson's sage observation that "[m]ost cases present only one, two, or three significant questions", 463 U.S. at 752 (quoting Robert H. Jackson, Advocacy Before the Supreme Court, 25 Temple L.Q. 115, 119 (1951)).  In stark contrast, Schwartz's 167-page pro se supplemental brief contains over fifty-five times more issues than Justice Jackson's maximum.  His § 2255 motion now claims at least thirty-two "significant questions" that Cedrone supposedly failed to raise on direct appeal.  Pet. 37-43.  Schwartz apparently overlooks the Supreme Court's belief that "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." Jones, 463 U.S. at 753.

The Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 363, 392-93 n.17 (2000), held that the "[u]nreliability or unfairness [of the trial or proceeding] does not result [to thus satisfy <u>Strickland</u>'s prejudice prong] if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."   See also <u>id.</u> at 391-92 ("there are . . . situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice'").   In <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 & n.2 (1993), the Court explained that there exist some circumstances where "a[ <u>Strickland</u>] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective" could "grant the defendant a windfall to which the law does not entitle him".   Schwartz is not entitled to such a windfall here.

Since the source of Schwartz's right to appellate counsel is Fifth Amendment due process, his right to a fair appellate proceeding was simply not denied him.   Schwartz had appellate counsel who submitted a merits brief and did not seek to withdraw under <u>Anders</u>, and so Schwartz cannot claim that he was only nominally represented by counsel on appeal or that his

counsel failed to perfect an appeal or file a brief.  Compare Roe
v. Flores-Ortega, 528 U.S. 470 (2000) (holding that the Strickland
standard applies to claim of ineffective assistance of appellate
counsel based on counsel's failure to file a notice of appeal);
Penson v. Ohio, 488 U.S. 75 (1988) (holding that criminal
defendant is denied effective assistance of appellate counsel
where counsel fails to follow the Anders withdrawal procedures).

Nor can we conclude that Schwartz's right to a fair
appellate proceeding was denied by his appellate counsel's failure
to represent his interests, raise any issue in the counseled
appellate brief, or even potentially misstate an argument or a
fact.  This is so because our Court of Appeals in the end did not
bar Schwartz from pursuing his right to be heard.  Indeed, he was
heard on all of the subjects he wanted to raise in his
comprehensive 167-page pro se supplemental brief.  Our Court of
Appeals has held that "as a general matter, it is not
inappropriate for counsel, after consultation with the client, to
override the wishes of the client when exercising professional
judgment regarding 'non-fundamental' issues." Sistrunk v. Vaughn,
96 F.3d 666, 670 (3d Cir. 1996).  Here it was Schwartz who
overrode his appellate counsel's professional judgment and
insisted on raising all of the issues that counsel decided did not

require the Court's attention.  But even more to the point, our Court of Appeals <u>considered</u> Schwartz's uncounseled arguments.

The appellate proceedings could not have been unfair from <u>counsel</u>'s conduct when the Court of Appeals explicitly indulged Schwartz's aggressive <u>pro</u> <u>se</u> direct appeal strategy.  <u>See also</u> <u>Jones</u>, 463 U.S. at 751-54 (rejecting <u>per</u> <u>se</u> rule that appellate counsel must raise every nonfrivolous issue requested by the client in part because "the accused has the ultimate authority to make certain fundamental decisions regarding the case" including whether to "take an appeal" and "[i]n addition, [the Court had already] held that, with some limitations, a defendant may elect to act as his or her own advocate").  Schwartz's insistent <u>pro</u> <u>se</u> appeal efforts show that he raised not only "every 'colorable' claim", but every conceivable one, too.  <u>See</u> <u>id.</u> at 754.  His direct appeal proceedings could not be unfair under such circumstances.

That Schwartz's claims were unsuccessful does <u>not</u> translate into a due process violation.  <u>Cf.</u> <u>Peppers</u>, 302 F.3d at 130 ("a defendant who chooses to represent himself must be allowed to make that choice, even if it works 'ultimately to his own detriment'" (quoting <u>Faretta</u>, 422 U.S. at 834)).  And, notably, Schwartz appears to deny these claims were meritless because he

baldly claims that "Cedrone failed to raise the arguments contained in the pro se supplemental brief" even though the Court of Appeals rejected them. Pet. 42 ¶ 17.

Our Court of Appeals's recent decision in United States v. Turner, 677 F.3d 570, 576-79 (3d Cir. 2012), does not alter our conclusion.[17] Turner's relevant holding for our purposes here is that Local Appellate Rule 31.1 precludes pro se briefs from appellants except in cases governed by Anders v. California, 386 U.S. 738 (1967), but that decision was not in the Federal Reporter during Schwartz's direct appeal. Moreover, its holding addresses an issue of local rule textual interpretation informed by pragmatic considerations. Turner does not reach any constitutional questions on this subject. Turner, 677 F.3d at 577-79. Consequently, the direct appeal actors' understandable

---

[17] Notably, Judge Hardiman's opinion was joined by Judges Chagares and Ambro. Judge Chagares authored the opinion affirming Schwartz's conviction and sentence in this matter after "consider[ing] the arguments Schwartz raised in his pro se supplemental brief and find[ing] them to be meritless." Schwartz, 315 F. App'x at 422 n.6; see also Court of Appeals Docket No. 05-2770 March 4, 2009 Order (Judge Chagares's Order granting Scwhartz's motions to file pro se submissions in addition to his counseled submissions). Turner acknowledges instances "in the past [when] [our Court of Appeals] considered counseled parties' pro se filings in 'unusual circumstances'". 677 F.3d at 578. We can hardly think of any case more unusual than this one.

ignorance of Turner's non-constitutional holding is of no moment to the constitutional analysis we employ here.

This conclusion finds support in a post-Turner case where our Court of Appeals acknowledged Turner but, because of facts sufficiently similar to those here, "s[aw] no harm" in its decision to consider counseled and pro se submissions in a non-Anders context solely "for the sake of being complete". See United States v. Bonner, 469 F. App'x 119, 121-22 n.1 (3d Cir. 2012) (justifying its decision because "(1) the panel's grant of permission to file a pro se brief and the government's response to that filing predate Turner, (2) it is unclear whether [defendant] was, in fact, represented at the time of his motion, and (3) none of [defendant's] pro se arguments ultimately have merit").

Though Turner codifies in case law new efficiencies in the appellate process, the adversarial and judicial processes in Schwartz's case were constitutionally sound even absent these efficiencies. The Government responded to, and our Court of Appeals considered, both Schwartz's and his appellate counsel's submissions. The Government and that Court thus treated Schwartz and his counsel's respective arguments with equal dignity. Schwartz in fact received more due process than Turner allows similarly-situated pro se appellants. Thus Schwartz's appellate

counsel claims remain meritless.

b)    Appellate Counsel's Conduct Was
<u>Neither Deficient Nor Prejudicial</u>

Even if Schwartz's case required a pure <u>Strickland</u> application we could alternatively conclude that his thirty-two separate claims of ineffective assistance of appellate counsel fail to satisfy <u>Strickland</u>'s two prongs.

First, it is beyond dispute that "the 'process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" <u>Sistrunk</u>, 96 F.3d at 670 (quoting <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (in turn quoting <u>Jones</u>, 463 U.S. at 751)). On this basis alone, Cedrone's performance on direct appeal was not deficient because he raised four substantive issues, <u>Schwartz</u>, 315 F. App'x at 415-16, and Schwartz has not pointed to any issues that Cedrone ignored that were stronger than the ones Cedrone actually presented to the Court of Appeals. See <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000) ("it is difficult to demonstrate that counsel was incompetent" and <u>quoting</u> <u>with</u> <u>approval</u> <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986), holding that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the

53

presumption of effective assistance of counsel be overcome"). By contrast, the Court of Appeals rejected as "meritless" the host of issues Schwartz raised.

Second, Schwartz's insistent appellate involvement precludes any possibility that Cedrone's concurrent appellate actions could have been prejudicial and we may dispose of his speculative claims of prejudice on this basis alone. Cf. Wilson, 515 F.3d at 699; see also section V(A)(2)(a), supra. Our common sense conclusion finds support in Pough v. United States, 442 F.3d 959, 969-70 (6th Cir. 2006) (Gilman, J., majority opinion), wherein a majority of the Sixth Circuit panel concluded over the dissent's sua sponte concern that habeas counsel's actions on an appeal following the Court's grant of a certificate of appealability did not prejudice petitioner's "due process"-like right where petitioner "demanded that [habeas] counsel . . . permit[] [petitioner] to take the lead role in drafting his appellate brief".[18]  The Pough majority reasoned that petitioner

---

[18] The majority and dissenting opinions do not explicitly rely on Strickland in their respective analyses, though both employ an unquestionably implicit Strickland analysis. Id. at 969 (Gilman, J., majority opinion) (describing the dissent as "characterize[ing] . . . counsel's actions and . . . conclu[ding] that [petitioner] has been prejudiced"); id. at 971-73 (Clay, J., dissenting). The opinions' cautious analyses reflect the dissent's concession that habeas petitioners do not have a recognized constitutional right to effective assistance of

54

"obtained the legal assistance that he desired and that he received constitutionally sufficient aid from his court-appointed attorney". Id. Gilman, J., majority opinion). Pough persuades us that Schwartz is a similarly unabashed "strong-willed client who desired to micromanage the actions being taken on his behalf" and who "obtain[ed] the legal assistance that he desired" by "drafting his [own pro se] appellate brief" and cannot now claim prejudice because of his own free choice to act as he did. See id.

Though Judge Clay's dissenting opinion in Pough may well present sound concerns in light of the specific facts of the case before him, none of his concerns are present in Schwartz's case. Consequently, both Pough opinions fortify our finding of no prejudice here. Judge Clay found that habeas counsel deficiently performed, and because of that deficiency petitioner suffered something cognate to "prejudice" because "it [wa]s not apparent that Petitioner was on notice that he was acting as his own counsel". Id. at 973 (Clay, J., dissenting). "Normally, when a petitioner represents himself pro se before this Court," Judge Clay explained, "there is no doubt that the petitioner and petitioner alone is responsible for the quality of legal argument

counsel. The Pough opinions are nevertheless useful because of their persuasive Strickland-like prejudice analyses.

on appeal.  Here, the odd sort of relationship . . . does not

appear to place Petitioner on notice that his briefing of the

legal issues would be the end game".  <u>Id.</u>  He ultimately concluded

that "[e]ven without the constitutional right to counsel on

habeas, the 'bait and switch' scenario created by the majority . .

. certainly appears violative of due process".  <u>Id.</u> At bottom,

Judge Clay was concerned that the majority's treatment of the

under-the-radar relationship between petitioner and <u>habeas</u> counsel

prejudiced the petitioner's access to a fair appellate proceeding

because he was effectively converted into a <u>pro se</u> litigant

despite the court's appointment of an attorney to avoid just that

situation.

     Schwartz's conduct on direct appeal could not make his

case any more different from <u>Pough</u> and from Judge Clay's concerns

in dissent.  Schwartz's submissions were unambiguously labeled <u>pro</u>

<u>se</u> and distinct in form and substance from Cedrone's

simultaneously-filed briefs.  Schwartz asked the Court of Appeals

for permission to file his <u>pro</u> <u>se</u> submissions as if he were

counsel of record, and his requests were in the end granted.

Schwartz's actions effectively transmuted his representation into

a hybrid form, and we cannot distill from this arrangement of

Schwartz's own creation any prejudice of the sort Judge Clay found in <u>Pough</u> -- this was no secretive "odd relationship".[19]

Our Court of Appeals provided Schwartz with the fair appellate proceeding he demanded and Schwartz cannot demonstrate that his counsel's failure to "[a]ppeal[] losing issues", <u>Sistrunk</u>, 96 F.3d at 670, was in any way deficient.  It also requires no elaboration to hold that his appellate counsel was hardly the but for cause of any prejudice warranting a remand.

> c) Schwartz's Claims Fail As a
> Matter of Legal Pleading Sufficiency

Our approaches to Schwartz's ineffective assistance of appellate counsel claims have so far focused on the categorical nature of these claims.  Alternatively, in sifting through Schwartz's thirty-two specific claims, we find that they may also be disposed of without a hearing for one or more of the following three reasons.

---

[19] And even if Schwartz's conduct before our Court of Appeals did not rise to the level of intentional forfeiture of his Fifth Amendment rights as in <u>Thomas</u>, 357 F.3d at 362-63, we cannot help but wonder if his contradictory arguments on collateral attack are precluded by a doctrine like judicial estoppel.  The tension between Schwartz's contentions on direct appeal and his § 2255 arguments are obvious, and his <u>pro</u> <u>se</u> status supplies no excuse for this inconsistency.  <u>See</u> <u>Mala</u>, 2013 WL 57895, at *5.

First, we are foreclosed from finding _Strickland_ prejudice where Schwartz alleges Cedrone should have raised certain arguments on direct appeal that Schwartz himself either raised in his "meritless" _pro se_ supplemental brief or that we reject on the merits here. Pet. 38 ¶ 1 (failure to challenge April 1, 2004 waiver of counsel as not being knowing and voluntary); _id._ 40-41 ¶¶ 10, 11 (failure to raise violation of self-representation at bail revocation hearing claim raised at _pro se_ supplemental brief 94-98); _id._ 41 ¶ 14 (failure to raise biased trial judge argument raised in _pro se_ supplemental brief); ¶ 15 (our Court of Appeals rejected this contention at _Schwartz_, 315 F. App'x at 417, as did the Solicitor General); _id._ 42 ¶ 16 (raised in _pro se_ supplemental brief and rejected in Court of Appeals), ¶ 17 (same), ¶ 20 (Schwartz waived his right to counsel despite our warnings on this subject), ¶ 21 (see _pro se_ supplemental brief at 218), ¶ 23 (see _pro se_ supplemental brief 207-208); _id._ 43 ¶ 25 (claims of outrageous Government conduct rejected), ¶¶ 27-29 (see discussion above noting no conflict of interest), ¶ 32 (same).

Second, many of Schwartz's allegations are vague and speculative and without factual support. Pet. 38-39 ¶ 2 (failing to identify any specific critical misconceptions or transpositions); _id._ 39 ¶¶ 3-5 (Schwartz's claims of prejudice are

speculative in light of Schwartz's vigorous efforts on direct appeal), ¶ 6 (failing to identify what "factually and legally erroneous" content warranted Cedrone's filing of a reply brief); id. 40 ¶ 7(c) (claiming Cedrone "promised . . . he would overturn [Schwartz's] conviction . . . [because our rulings on unspecified under seal applications] were 'dead wrong'"), ¶¶ 8, 9; id. 41 ¶ 12; id. 42 ¶ 8 (claiming Cedrone was ineffective on appeal for failing to raise ineffective assistance of counsel at sentencing claims even though Schwartz represented himself at sentencing and Cedrone's appellate brief did raise some sentencing issues), ¶¶ 19, 22; id. 43 ¶¶ 24, 31.

Lastly, the record belies Schwartz's allegations and they may be disposed of without further consideration. Pet. 38-39 ¶ 2 (conclusorily claiming that Cedrone's submissions conflate proceedings before us and Judge Bartle in Cr. No. 04-231 but in his pro se supplemental brief at pages 94-98 Schwartz himself commits this very error); id. 41 ¶ 13 (Cedrone's appellate briefs cite "facts and law" and Schwartz identifies no "critical omissions" Cedrone made); id. 39 ¶ 7 (claiming "Cedrone obstructed the preparation of the pro se brief by denying Schwartz access to Schwartz'[s] files", "fail[ed] to provide [him] with copies of the sealed orders" and other pro se filings but ignoring the June 15,

2007 and August 10, 2007 Third Circuit Clerk Orders reflecting that "Appellant should have retained a copy of" [his pro se filings], and "[t]o the extent possible, . . . [Schwartz's] requested pro se filings have been made available to" him and also docket entries from June and July of 2007 indicating that Cedrone sent the documents Schwartz requested to Schwartz with no further objection from Schwartz)(Third Circuit Court of Appeals Docket No. 05-2770)); id. 43 ¶ 26 (claiming that we barred him from interviewing witnesses by Order, but see docket entry # 213 n.2), ¶30.

    B.    Schwartz's Trial Process and
          Government Misconduct Claims

          We now turn to Schwartz's substantive trial court abuse and Government misconduct claims.  We need not reach the merits of these claims, however, because they were already litigated on the unassailable direct appeal, and we find no reason to revisit these issues.  And, to the extent Schwartz attempts to raise any arguments for the first time in his § 2255 motion, they are procedurally defaulted and he has not shown cause for this default nor can we find any.

1.   The Standard

Our Court of Appeals has held that "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. [§] 2255." United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981) (per curiam); see also Kaufman v. United States, 394 U.S. 217, 227 n.8 (1969); Gov't of the Virgin Islands v. Nicholas, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (also recognizing a role for "the trial judge's personal knowledge" of the proceedings in resolving Section 2255 motions); United States v. Pelullo, 305 F. App'x 823, 827 (3d Cir. 2008) (holding that ordinarily a "§ 2255 petition [can]not 'be used to relitigate matters decided adversely on appeal.'" (quoting Nicholas, 759 F.2d at 1075)); see also Withrow v. Williams, 507 U.S. 680, 721 (1993) (Scalia, J., concurring) (citing Orejuela and other Courts of Appeal opinions in support of the proposition that "federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal").

Moreover, claims that a § 2255 habeas corpus petitioner

should have raised at trial and/or on direct appeal but did not are barred by the "procedural default" rules absent "cause" and "prejudice", or "actual innocence". See, e.g., Sanchez-Llamas v. Oregon, 548 U.S. 331, 350-51 (2006) ("[t]he general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review"); Massaro, 538 U.S. at 504; United States v. Fray, 456 U.S. 152, 166-69 n.15 (1982); see also Bousley v. United States, 523 U.S. 614, 620-25 (1998); Reed v. Farley, 512 U.S. 339, 354 (1994); Davis v. United States, 411 U.S. 233 (1973).

### 2. Background Facts: Schwartz's Trial Process and Government Abuse Arguments in his § 2255 Motion

Schwartz's § 2255 motion attempts to re-argue his same trial court abuse and Government misconduct claims that our Court of Appeals rejected as meritless on direct appeal. See Pet. 44-54 (alleging that we conducted an off the record investigation, violated his right to confront witnesses and present a meaningful defense by imposing a burdensome process and to secure expert witnesses, threatened him with incarceration, intimidated his counsel, comported ourselves impartially and gave the jury that impression, sanctioned prosecutorial misconduct, improperly sustained objections and admitted or excluded evidence, failed to

issue subpoenas, made incorrect sentencing calculations, precluded him from confronting evidence at his sentencing, and imposed the obstruction of justice enhancement, among other things); Pet. 54-63 (claiming that the Government outrageously handled witnesses, knowingly suborned perjury, violated Grand Jury secrecy, made material misrepresentations to the jury and the Court at sentencing, denied him Internet access, etc., etc.).

3.   Application: The Prior Decisions
     Will Not Be Disturbed And Any
     New Claims Are Procedurally Barred

We have already noted that "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. [§] 2255." Orejuela, 639 F.2d at 1057.  Schwartz's § 2255 motion presses the same trial court and Government abuse arguments that he and his appellate counsel raised on direct appeal.  Our Court of Appeals rejected these arguments.  The Supreme Court elected not to disturb them.  All three levels of the Article III judiciary -- aided at times by the Solicitor General -- have expressly or implicitly found no merit in any of Schwartz's arguments. Schwartz offers no explanation for why we should revisit these

63

issues again, nor can we find any.  Notably, Schwartz points to no "new evidence" or "new authority" to support his position.[20]  See Pet. 63-65 (Schwartz's "actual innocence" claim fails to mention the existence of any new evidence or legal authority).

It risks understatement to note that we are intimately familiar with the facts of this case and its more than 444 docket entries filling four records boxes.  We presided over the twelve days of evidence at trial, countless hearings and proceedings before trial convened, and resolved the many motions that Schwartz himself filed.  We cannot find any "countervailing considerations", Withrow, 507 U.S. at 721 (Scalia, J., concurring), to re-ignite debate on these well-settled and much-deliberated matters.

To the extent Schwartz's § 2255 motion presents trial court and Government abuse claims that are not entirely co-extensive with his prior submissions to our Court of Appeals, he

---

[20] In Giacalone v. United States, 739 F.2d 40, 43 (2d Cir. 1984), the Second Circuit implied that prior decisions could be disturbed on collateral attack if a petitioner presents "new evidence" or "new authority".  Cf. 28 U.S.C. § 2244(c) (allowing for the disturbance of a final Supreme Court disposition in a state habeas corpus matter only if "the court shall find the existence of a material and controlling fact which did not appear in the record  . . . [and] that the applicant for the writ of habeas corpus could not have caused . . . to appear in such record by the exercise of reasonable diligence").

has procedurally defaulted his chance to raise them for the first time, at this late date, in his motion for habeas corpus relief.[21]  To be sure, an "exception [exists] if a defendant can demonstrate both 'cause' for not raising the claim at trial [or on direct appeal], and 'prejudice' from not having done so", Sanchez-Llamas, 548 U.S. at 351.  Schwartz cannot establish any "cause" for his failure to speak up sooner on any of these issues.  See Section V(A).  Schwartz does not claim to have learned of any new evidence or legal authority to alter the foundation for his conviction.

And, as the lengthy record before us, the Court of Appeals, and the Supreme Court collectively reveal, Schwartz has never lacked the words for, or missed opportunities to raise, arguments that were solicited (or not), or been compliant with court rules (or not) in the tribunals that have come into contact

---

[21] For example, Schwartz's direct appeal did not challenge the sufficiency of our April 1, 2004 self-representation colloquy. See, e.g., United States v. Thomas, 357 F.3d 357 (3d Cir. 2004) (challenging Sixth Amendment waiver on direct appeal); United States v. Peppers, 302 F.3d 120 (3d Cir. 2002) (same).  Moreoever, his attempt to escape his decision to proceed pro se by attacking the adequacy of his waiver is in tension with his claim on direct appeal that we should have allowed him to represent himself even earlier.  Pro Se Supp. Br. 94-98 (Third Circuit Court of Appeals Docket No. 05-5770, filed on Nov. 14, 2007).  To be sure, we have already concluded above that the April 1, 2004 colloquy was more than adequate.

with this matter.  See, e.g., E.D. Pa. Criminal Docket No. 03-35

(documenting many, many initial motions, motions for

reconsideration, ex parte motions, interlocutory appeals,

petitions for mandamus); Third Circuit Court of Appeals No. 05-

2770 April 13, 2007 Order, November 6, 2007 Order and March 4,

2009 Order (involving the filing of Schwartz's pro se supplemental

brief on direct appeal); Supreme Court No. 09-7923 April 15, 2010

Schwartz pro se reply brief and May 21, 2010 petition for

rehearing.

      C.   Schwartz's Actual Innocence Claim

      Schwartz's defaulted § 2255 "claim[s] may still be

reviewed in this collateral proceeding if he can establish that

[a] constitutional error . . . has probably resulted in the

conviction of one who is actually innocent", Bousley, 523 U.S. at

623, such that ""'in light of all the evidence,'"" it is more

likely than not that no reasonable juror would have convicted

him."" Id. (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995)

(quoting article by Judge Friendly)).  The Supreme Court has made

it plain that "'actual innocence' means factual innocence, not

mere legal insufficiency."  Id.[22]

_____

    [22] Neither the Supreme Court nor our Court of Appeals have
decided whether "actual innocence" is a freestanding, cognizable

Schwartz makes no serious effort to allege his _factual_ innocence.  He merely attempts to rehash the "legal insufficiency" arguments that he raised in his "meritless" _pro se_ supplemental brief to our Court of Appeals, _compare_ Pet. 63 ¶ 2, _with_ _Pro_ _Se_ Supp. Br. 212-220 -- arguments that are inadequate as a matter of law to prevail on an actual innocence claim.  _See_ _Bousley_, 523 U.S. at 623.  He reprises other arguments against us and the Government that have no bearing on his _factual_ innocence.  _See_ Pet. ¶ 18.  He also conclusorily denies other facts that the evidence brought out at trial unequivocally established.  _See,_ _e.g.,_ Pet. 63 ¶ 3 ("Schwartz conspired with no one"), ¶ 6 ("Schwartz acted in good faith"), ¶¶ 7-8 ("Schwartz did not make any false representations" or "intend loss or harm"); _id._ 64 ¶ 17 ("Schwartz did not obstruct justice with Dorsey").  Nor does Schwartz allege that he is actually innocent on the basis of any

---

claim for relief under § 2255.  _See_ _House v. Bell_, 547 U.S. 518, 554-55 (2006); _Herrera v. Collins_, 506 U.S. 390, 400, 404 (1993); _Albrecht v. Horn_, 485 F.3d 103, 121 (3d Cir. 2007); _Fielder v. Varner_, 379 F.3d 113, 122 (3d Cir.2004).  Since Schwartz's § 2255 motion asserts "actual innocence" as a claim, we will assume it exists and not reach the question because Schwartz fails to clear the "actual innocence" hurdle.  Nevertheless, we assume such a freestanding right exists here only for purposes of argument.  Thus, our treatment of Schwartz's "actual innocence" arguments implicate actual innocence's recognized function as a gateway to revive defaulted claims and as an assumed freestanding right to _habeas_ _corpus_ relief.

newly-discovered evidence.  See Sistrunk v. Rozum, 674 F.3d 181, 191 (3d Cir. 2012).  On the basis of Schwartz's conclusory averments attacking the "legal sufficiency" of the Government's case against him, there is no way that we could conclude that "it is more likely than not that no reasonable juror would have convicted [him].'"  See Bousley, 523 U.S. at 623 (internal quotations and citations omitted).

VI.  No Hearing Is Required

As a general matter, district courts are "required to hold an evidentiary hearing unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  Booth, 432 F.3d at 545-46 (internal quotations omitted).  Our Court of Appeals has recently explained that in deciding whether a hearing is necessary we "must evaluate (i) 'whether the petition presents a prima facie showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim,' and (ii) whether the relevant factual allegations to be proven at the evidentiary hearing are 'contravened by the existing record' or the record 'otherwise precludes habeas relief[.]'"  Han Tak Lee v. Glunt, 667 F.3d 397, 406-07 (3d Cir. 2012) (quoting Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir. 2010)).

For the reasons canvassed at length above, the record in Schwartz's case on its face precludes habeas relief, see Han Tak Lee, 667 F.3d at 406-07.  Thus, there is no need to convene a hearing to decide his § 2255 motion.

## VII. We Will Deny Schwartz's Request
##      For Leave to Amend His Petition

We will also deny Schwartz's request for "leave to AMEND any issues the Court finds lacking the 'necessary specificity.'" Pet. iii. (citing Thomas, 221 F.3d at 437-38 (holding that a district court should not summarily dismiss a § 2255 motion pursuant to § 2255 Rule 4(b) when it contains mostly conclusory and vague allegations but instead "pare[] down the extraordinarily lengthy list of grounds and proceed[] on those").  This Memorandum is testament to our far from summary disposition of Schwartz's § 2255 motion and so Thomas's caution does not apply.  And, as our analysis reveals, we have "appl[ied] the relevant legal principle even when [Schwartz's] complaint has failed to name it" in accord with our Court of Appeals's teaching on the liberal construction of pro se submissions.  See Mala, 2013 WL 57895, at *3-*4.

Moreover, Schwartz has had the Government's 172-page response since November of 2011.  The Government thus exhaustively put Schwartz on notice of his motion's many vague and conclusory

69

allegations.  Schwartz never filed a motion for leave to amend or
clarify his petition in the many months following the filing of
the Government's response.  And even after we afforded him three
hundred days to file a reply to the Government's response, he
failed to do so.  Though Schwartz wraps himself in the contention
that his "pleadings are protected by the pro se rule", Pet. iii.,
as we noted at the outset of our discussion here that rule has its
limits -- and most pointedly for seasoned <u>pro</u> <u>se</u> advocates like
Schwartz.  <u>See</u> <u>also</u> <u>Mala</u>, <u>supra</u>.  At this late date, and in light
of the reasons canvassed above, leave to amend here would be
futile and would only further protract this already epic saga.

VIII.    <u>No Certificate of Appealability Is Warranted</u>

       For the reasons discussed at length above, Schwartz has
failed to make "a substantial showing of the denial of a
constitutional right".  We therefore will decline to issue a
certificate of appealability.  28 U.S.C. § 2253(c)(2).

       As to all of his ineffective assistance counsel claims
and his actual innocence claims, we conclude that "reasonable
jurists would [not] find [our] assessment of the constitutional
claims debatable or wrong."  <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473,
484 (2000); <u>Santana v. United States</u>, 98 F.3d 752, 757 (3d Cir.
1996).

And as to Schwartz's trial court abuse and Government misconduct claims that we reject on procedural grounds, "jurists of reason would [not] find it debatable whether [we] w[ere] correct in [our] procedural ruling".  See <u>Slack</u>, 529 U.S. at 484-85.  Thus, we will not grant him a certificate of appealability on these claims either.

IX.  <u>Conclusion</u>

Schwartz's § 2255 motion, though full of sound and fury, in the end -- and this must be, at long last, The End -- signifies nothing warranting relief.